James B. BURGER, Plaintiff,

v.

UNITED STATES of America, Defendant.

No. C–1–89–426.

United States District Court, S.D. Ohio, W.D.

Oct. 19, 1990.

Thomas Koustmer and John Rockel, Cincinnati, Ohio, for plaintiff.

Jan Holtzman and Donetta Wiethe, Cincinnati, Ohio, for defendant.

ORDER

CARL B. RUBIN, District Judge.

By agreement of the parties, this matter is before the Court upon cross-motions for summary judgment. The Court does hereby set forth its findings of fact, opinion, and conclusions of law.

*Findings of Fact*

(1) Plaintiff James B. Burger is the administrator of the estate of Marsha Burger, deceased.

(2) The defendant in this action is the United States Parole Commission (Parole Commission).

(3) On May 23, 1988, Marsha Burger was murdered during the commission of an armed robbery at the First Ohio Savings Bank, St. Bernard, Ohio.

(4) James Mills and Lewis Thomas were convicted in the Hamilton County, Ohio Court of Common Pleas of the aggravated murder of Marsha Burger and aggravated robbery with specifications of the First Ohio Savings Bank.

(5) At the time of the robbery and murder, Mills and Thomas were parolees under the supervision of the Parole Commission. Their parole supervisor was United States Probation Officer Charles Patrick Crowley.

(6) Mills and Thomas had a history of involvement with the federal criminal justice system. On August 18, 1969, Mills was convicted in the United States District Court for the Southern District of Ohio of bank robbery. He was sentenced to a term of twenty-five years imprisonment. On October 25, 1974, he was paroled through the Talbert House in Cincinnati, Ohio.

(7) On October 15, 1975, while both on parole, Mills and Thomas were convicted in the United States District Court for the Southern District of Ohio of armed bank robbery. They were each sentenced to a term of twenty-five years imprisonment.

(8) On October 7, 1975, parole violation warrants were issued by the Parole Commission for Mills and Thomas. The Parole Commission instructed the United States Marshal that if Mills and Thomas were sentenced on new federal charges, the warrants were to be returned unexecuted.

(9) The United States Marshal returned the warrant for Mills to the Parole Commission after Mills was sentenced for the October 1975 bank robbery.

(10) Parole Commission procedures required the Parole Commission to forward the returned warrant to the federal prison where Mills was incarcerated to be placed as a detainer against him. The Parole Commission's regional office did not forward a detainer to the prison and no detainer was lodged against Mills.

(11) On July 25, 1983, Mills was transferred to the Talbert House in Cincinnati, Ohio on work release pending his release on parole. On October 14, 1983, Mills was granted parole effective November 3, 1983. His parole conditions included drug aftercare.

(12) Crowley supervised Mills on parole from approximately November, 1983 until August, 1984. On October 18, 1984, a warrant for Mills' arrest issued for violation of the conditions of his parole, specifically failure to submit supervision reports, failure to report as instructed, and failure to

report a change of address. Mills absconded before he could be arrested.

(13) The United States Marshal arrested Mills in Cincinnati on September 13, 1985. He had been at-large for approximately one year. The Parole Commission revoked Mills' parole on December 9, 1985 and Mills was sent to federal prison.

(14) Mills was transferred to the Talbert House on July 1, 1986. He was reparoled on September 13, 1986. His parole conditions included drug aftercare.

(15) On September 25, 1986, Mills was arrested in Cincinnati for unlawful possession of a prescription drug. Crowley's notes dated September 30, 1986 disclose that Crowley was aware of the arrest.

(16) On October 28, 1986, Mills was convicted of unlawful possession of a prescription drug, a misdemeanor, in violation of Cincinnati Municipal Code Section 601–23. He was given a suspended sentence of 90 days in prison, fined $500, and placed on probation for two years. A stay was granted pending appeal. On June 24, 1987, the Ohio Court of Appeals reversed the conviction.

(17) On March 20, 1987, the Parole Commission removed the special condition of drug aftercare as a parole condition for Mills.

(18) A urine sample taken from Mills on March 21, 1988, tested positive for cocaine. Several urine samples taken prior to that date and four samples taken in May, 1988 tested negative for cocaine.

(19) Notes by Crowley dated May 20, 1988 disclose that a detective from the Cincinnati Police Department had informed Crowley that two capiases for speeding and possession of an open flask were pending against Mills. The detective further informed Crowley that Mills was a possible suspect in a bank robbery that had occurred in February of 1988 but that little proof of his involvement existed.

(20) Plaintiff has exhausted his administrative remedies as required under 28 U.S.C. Sec. 2675.

*Claims*

This is an action for negligence and wrongful death brought pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. Sec. 2671–2680 and Ohio Revised Code Ann. Sec. 2125.02(B). Plaintiff seeks to recover damages in the amount of 2 million dollars. Plaintiff claims that defendant negligently granted probation/parole to Mills; negligently supervised Mills and Thomas while they were on probation/parole prior to May 23, 1988; and negligently failed to terminate the probation of Mills and Thomas in accordance with defendant's policies, procedures and statutes, which omission constitutes negligence *per se.* Plaintiff alleges that Marsha Burger died as a direct and proximate result of negligent acts and omissions of United States' employees while acting within the scope of their office or employment, under circumstances where the United States, if a private person, would be liable in accordance with the law of Ohio.

Defendant alleges that it is immune from liability for its actions under the discretionary function exception of the FTCA. Defendant further claims that plaintiff has failed to state a cause of action against it under Ohio law.

*Summary Judgment Standard*

The summary judgment procedure under Fed.R.Civ.Proc. 56 is designed to secure a just, speedy, and inexpensive determination of any action. *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). However, Rule 56(c) permits the Court to grant summary judgment as a matter of law *only* after the moving party has identified as the basis of its motion "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any" which demonstrate the absence of any genuine issue of material fact. *Id.* at 323, 106 S.Ct. at 2552. The party opposing a properly supported motion for summary judgment "may not rest upon mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Lib-*

*erty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (*quoting, First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)). The evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513 (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970)). The function of the court is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510. There is no genuine issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510 (*citing Cities Service*, 391 U.S. at 288–289, 88 S.Ct. at 1592–1593). If the evidence is merely colorable, *Dombrowski v. Eastland*, 387 U.S. 82, 87 S.Ct. 1425, 18 L.Ed.2d 577 (1967) or is not significantly probative, *Cities Service*, 391 U.S. at 290, 88 S.Ct. at 1593, judgment may be granted. *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510.

### Discretionary Function Exception

Title 28 U.S.C. Sec. 1346(b) vests the United States District Courts with exclusive jurisdiction of civil claims against the United States for

> money damages, ... injury or loss of property, or personal injury or death caused by the negligence or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

This grant of jurisdiction is subject to the provisions of 28 U.S.C. Ch. 171. Section 2680 under that chapter provides that Sec. 1346(b) shall not apply to,

> (a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

In determining whether a function is discretionary, the focus is on the nature of the conduct rather than the status of the actor. *Berkovitz v. United States*, 486 U.S. 531, 536, 108 S.Ct. 1954, 1958, 100 L.Ed.2d 531 (1988). The determination requires a two-part inquiry. *Id.* The first prong of this inquiry is whether the action is a matter of choice for the actor. *Id.* To be discretionary, conduct must involve an element of choice or judgment. *Id.* Accordingly, the discretionary function exception does not apply where the federal statute, regulation or policy specifically prescribes the course of action for the employee to follow so that the employee has no rightful option but to follow the prescribed course. *Id.*

Assuming the challenged conduct does involve judgment, the Court must determine whether the judgment is of the kind that the discretionary function exception was designed to shield. *Id.* The policy underlying this limitation is one of preventing "second-guessing" of legislative and administrative decisions grounded in social, economic and political policy. *Id.* A function is discretionary where there is room for policy judgment and decision. *Id.* at 537, 108 S.Ct. at 1959 (*quoting Dalehite v. United States*, 346 U.S. 15, 34, 73 S.Ct. 956, 967, 97 L.Ed. 1427 (1953)).

The first issue before the Court is whether the functions which defendant performed or failed to perform in connection with plaintiff's cause of action were discretionary acts of the type the discretionary function exception was intended to shield. If so, then the Court lacks subject matter jurisdiction. *See Myslakowski v. United States*, 806 F.2d 94, 96 (6th Cir.1986), *cert. denied*, 480 U.S. 948, 107 S.Ct. 1608, 94 L.Ed.2d 793 (1987).

## I. Parole Release Decision

█ The decision of whether to release a criminal offender on parole is clearly an exercise of discretion. Title 18 U.S.C. Sec. 4206 sets forth the criteria for determining parole.[1] It provides, in pertinent part, that:

(a) If an eligible prisoner has substantially observed the rules of the institution or institutions to which he has been confined, and if the Commission, upon consideration of the nature and circumstances of the offense and the history and characteristics of the prisoner, determines:

(1) that release would not depreciate the seriousness of his offense or promote disrespect for the law; and

(2) that release would not jeopardize the public welfare;

subject to the provisions of subsections (b) and (c) of this section, and pursuant to guidelines promulgated by the Commission pursuant to section 4203(a)(1), such prisoner shall be released.

(c) The Commission may grant or deny release on parole notwithstanding the guidelines referred to in subsection (a) of this section if it determines there is good cause for so doing ...

Title 28 C.F.R. Sec. 2.18 states that "The granting of parole to an eligible prisoner rests in the discretion of the U.S. Parole Commission".

The United States Supreme Court has acknowledged the inherently subjective and predictive nature of a parole-release decision. *Board of Pardons v. Allen*, 482 U.S. 369, 374, 107 S.Ct. 2415, 2418, 96 L.Ed.2d 303 (1987). The administrative decision to grant release on parole presents "sensitive choices". *Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex*, 442 U.S. 1, 7, 99 S.Ct. 2100, 2103, 60 L.Ed.2d 668 (1979). The decision is based on a combination of factors, many of which are entirely subjective appraisals by Parole Board members based on their experiences. *Id.* at 9–10, 99 S.Ct. at 2104–2105. The decision frequently rests simply on in-

formed predictions as to what course of action would best serve correctional purposes and "turns on a discretionary assessment of a multiplicity of imponderables". *Id.* at 10, 99 S.Ct. at 2105 (quoting Kadish, The Advocate and The Expert Counsel in the Peno–Correctional Process, 45 Minn.L. Rev. 803, 813 (1961)). The Court in *Greenholtz* noted that,

No ideal, error-free way to make parole-release decisions has been developed; the whole question has been and will continue to be the subject of experimentation involving analysis of psychological factors combined with fact evaluation guided by the practical experience of the actual parole decisionmaker in predicting future behavior. *Id.* at 13, 99 S.Ct. at 2106.

Because the decision of whether to release a prisoner on parole is a judgment call that Parole Board members must make based on a host of intangible factors, the release decision function is discretionary. The question then becomes whether the judgment is of the kind that the discretionary function exception was designed to shield.

The purpose of parole is to further the long-range objective of rehabilitating a prisoner and to promote society's interest in restoring a convicted criminal to a normal and useful life within the boundaries of the law. *Greenholtz*, 442 U.S. at 13, 99 S.Ct. at 2106; *Morrissey v. Brewer*, 408 U.S. 471, 477, 92 S.Ct. 2593, 2598, 33 L.Ed.2d 484 (1972). Parole also serves the public's interest in alleviating the cost of keeping an individual in prison. *Id.* A parole release decision is thus grounded in social and economic considerations. It is a policy judgment that lies within the expertise of Parole Board members and should not be "second-guessed" by the courts. The Court therefore finds the decision to parole a prisoner is shielded under the discretionary function exception. Accordingly, subject matter jurisdiction over plaintiff's claim that the Parole Commission

1. Title 18 U.S.C. Secs. 4201 to 4218 were repealed effective November 1, 1986 (Pub.L. 98–473, Title II, Secs. 218(a)(5), 235, Oct. 12, 1984,

98 Stat. 2027, 2031). These sections were made applicable for five years to individuals who committed offenses prior to November 1, 1987.

negligently determined to release Mills on parole is lacking.

## II. Failure to Lodge Detainer

■ Plaintiff alleges that the Parole Commission was negligent in failing to follow Section 2.47(c)(2) of the Parole Commission Rules.[2] That rule provides that it shall be the policy of the Parole Commission that a revoked parolee's original sentence will start to run only upon release from confinement on the new sentence or reparole, whichever came first. Plaintiff alleges that this rule was not followed in Mills' case when he violated his parole from his 1969 conviction by committing a second robbery in 1975. This is so because the detainer issued against Mills for this violation was lost and was therefore never lodged against him. Plaintiff alleges that as a result of this omission, Mills was not required to serve the remaining nineteen years on his original sentence.

The Court need not address whether it was mandatory that a detainer be lodged against Mills and that he be imprisoned on his original sentence following his reparole on the 1975 conviction. Even if the Parole Commission omitted to follow a mandatory rule, plaintiff's argument that this omission led to Mills' release on parole and to the murder of Marsha Burger must fail. Plaintiff's argument assumes that Mills would have been required to serve the full amount of time remaining on his original sentence had the detainer been lodged against him. Plaintiff cites no authority for the proposition that at the time in issue, the governing rules and statutes mandated that an individual who commits a crime while on parole must serve the entire amount of time, or even a specified minimum amount of time, remaining on his original sentence with no possibility of parole. Absent such a rule or statute, it is impossible to conclude that had the detain-

er been lodged against Mills, he would have been in prison at the time of Marsha Burger's murder.

## III. Parole Supervision

Plaintiff claims that defendant negligently failed to supervise Mills and Thomas on parole.[3] Specifically, plaintiff alleges that defendant failed to follow a previously adopted parole supervision plan for Mills; failed to require Mills to adhere to parole requirements; failed to report recurring instances of substance abuse by Mills; failed to obtain professional substance abuse counseling for Mills; failed to detect a recurrence of Mills' substance abuse problems; failed to report a urine test that was positive for cocaine; warned Mills of the positive test results and waited a month before retesting him; failed to keep Mills away from known felons; failed to report Mills' criminal arrest and conviction; and misinformed law enforcement officials about Mills' physical appearance at the time of the February 1988 bank robbery in which he was a suspect. The Court will address each of these claims in turn.

### A. Parole Supervision Plan

■ Prior to its revision in November, 1988, 18 U.S.C. Sec. 4209(a) provided that

> In every case, the Commission shall impose as conditions of parole that the parolee not commit another Federal, State or local crime and, if a fine was imposed, that the parolee make a diligent effort to pay the fine in accordance with the judgment. The Commission may impose or modify other conditions of parole to the extent that such conditions are reasonably related to—
>
> (1) the nature and circumstances of the offense; and

---

**2.** Defendant "does not concede" that the version of the rule plaintiff cites was in effect at the time in issue. Defendant does not cite the version of the rule which was applicable. The Court will assume for purposes of this opinion that plaintiff has correctly cited the rule in effect at the time of Mills' release from imprisonment on the 1975 sentence.

**3.** Plaintiff does not make any factual assertions in support of his claim that defendant negligently supervised Thomas on parole. Accordingly, defendant is entitled to summary judgment insofar as this claim relates to Thomas.

(2) the history and characteristics of the parolee;

and may provide for such supervision and other limitations as are reasonable to protect the public welfare.

Subsection (b) provided, in pertinent part, that

The conditions of parole should be sufficiently specific to serve as a guide to supervision and conduct ...

Title 18 U.S.C. Sec. 4203(b) empowered the Parole Commission to impose reasonable conditions on an order granting parole and to request probation officers to perform such duties with respect to a parolee that the Commission deemed necessary for properly supervising and assisting such parolee.

The governing rules and statutes thus provide leeway in formulating and implementing a plan of supervision. The decision as to what plan of supervision to follow must therefore be considered a discretionary function. As with the decision to parole a prisoner, devising and implementing a supervision plan is a matter within the Parole Commission's expertise and is the type of function that the discretionary function exception was intended to shield.

### B. Omissions Related To Mills' Substance Abuse

At all relevant times, Title 18 U.S.C. Sec. 4209(c)(2) provided that as a condition of release on parole, a parolee who is an addict or drug dependent person within the meaning of specified statutes may be required to participate in community supervision programs for all or part of the period of parole.[4] The wording of the above section is permissive. An addict or drug-dependent person *may* be required to participate in a community assistance program, but participation is not mandated under the rule. Section 2.40–03(a) of the Parole Commission Rules effective November 4, 1985

requires that each parolee determined to be drug dependent or an addict under the Drug Abuse Prevention and Control Act (21 U.S.C. Sec. 841) shall have a special drug condition, which includes participation in a treatment program, imposed unless there are compelling reasons to the contrary. However, Section 2.40–03(c) allows a probation officer to determine that the condition is no longer necessary and to recommend to the Regional Commission that the condition be deleted.

■ Whether a parolee is in fact an addict or drug-dependent person will not always be a clear-cut determination. Mills' involvement with drugs on numerous occasions suggests the possibility that he fit within one of these categories. However, evidence that Mills was an addict or a drug-dependent person at the time Crowley recommended that the drug aftercare condition be lifted is lacking. Although urine samples were taken from Mills numerous times while he was on parole, only the sample taken on March 21, 1988 tested positive. Accordingly, the Court finds no violation of a mandatory rule stemming from the lifting of the drug aftercare condition.

■ Section 2.42–02(b)(6) of the Parole Commission Rules effective April 5, 1987, requires the probation officer to immediately report substance abuse when the parolee has "purchased, possessed, or administered a controlled substance under circumstances which lead the probation officer to believe the parolee is abusing controlled substances on an on-going basis or is involved in the distribution of controlled substances". If the parolee has been arrested, the probation officer must support the alleged violation through personal observation or other evidence.

Plaintiff has cited no evidence which necessarily would have led Crowley to believe

---

**4.** Title 18 U.S.C. Sec. 4251(a) defines an addict as an individual who habitually uses any narcotic drug as defined under Section 102(16) of the Controlled Substances Act so as to endanger the public morals, health, safety, or welfare, or who is or has been so far addicted to the use of such narcotic drugs as to have lost the power of

self-control with reference to his addiction. Title 42 U.S.C. Sec. 201(q) defines a drug dependent person as one who is using a controlled substance as defined in section 802 of Title 21 and who is in a state of psychic or physical dependence, or both, arising from the use of that substance on a continuous basis.

that at the time of the positive cocaine test, Mills was using drugs on an on-going basis or was involved in the distribution of drugs. Moreover, the Parole Commission rules did not mandate that a probation officer report a positive urine test for a parolee not under a special drug aftercare condition. Accordingly, whether to report this particular parole violation was a matter within Crowley's discretion.

■ Plaintiff alleges that Crowley violated Ohio law by failing to report the positive drug test results to the Parole Commission or any other agency or authority. Ohio Rev.Code Ann. Sec. 2925.22 makes it a crime for an individual to fail to report to law enforcement authorities a felony which he knows has been or is being committed. Under Ohio Revised Code Ann. Sec. 2925.-11, use of cocaine is a felony of the fourth degree.

Plaintiff has cited no authority for the proposition that Ohio Rev.Code Ann. Sec. 2925.22 creates a private cause of action. Absent such authority, the Parole Commission cannot be held liable to plaintiff for Crowley's alleged violation of Ohio law.

■ Plaintiff alleges that Crowley's failure to obtain records concerning Mills' drug use from the institution where he had been imprisoned violated 28 C.F.R. Sec. 2.19. That section enumerates the types of information the Parole Commission shall consider in making a parole or reparole determination. It imposes no duty on a probation supervisor to obtain information for purposes of supervising a parolee.

### C. Failure to Act on Parole Violations

■ Plaintiff contends that the probation supervisor omitted to take appropriate action when Mills violated the conditions of his parole by failing to make a monthly report, report a change of address, and report a criminal conviction within two days; drinking to excess on several occasions; taking a leave of absence from school; quitting his job; and associating with Thomas, his codefendant from a prior bank robbery. Plaintiff alleges that a reasonably prudent person would have moved to violate Mills' parole for these infractions. Plaintiff also alleges that the Parole Commission rules and federal statutes required Crowley to report these violations to the Commission and that his failure to do so constitutes negligence *per se*.

It is undisputed that Mills violated the conditions of his parole on numerous occasions by committing some of the above-listed infractions. Section 2.42–02(b) of the Parole Commission Rules (November 4, 1985) vests discretion in the probation officer as to when to report technical violations or infractions but requires that all violations shall be reported immediately under the following circumstances:

(4) The releasee fails to submit written monthly reports for 2 consecutive months even though his whereabouts are known to the probation officer.

(7) The releasee has continued to associate with persons who have a criminal record after the releasee has been directed specifically by the probation officer to discontinue the association [except that all associations with persons with a criminal record by a releasee classified as an original jurisdiction case by the Commission shall be reported immediately].

(9) The releasee violates any special condition of parole or mandatory release.

Pursuant to Section 2.42–02, the probation supervisor was not required to report the above-listed infractions to the Parole Commission. The Court notes with the benefit of hindsight that Mills was obviously associating with Thomas while on parole as evidenced by the fact that they committed a bank robbery together in February of 1988. However, there is no indication in the record that the probation supervisor was aware of this association prior to the time Mills and Thomas were charged with committing the robbery. Plaintiff also points to the fact that Mills and Thomas were in the same half-way house following release on parole for the May 1975 robbery they committed together. However, the rules of the Parole Commission do not prohibit housing co-defendants in the same facility.

Additionally, although plaintiff alleges that Mills failed to submit a monthly report, a probation supervisor must only report the failure to submit monthly reports in consecutive months. There is no allegation that Mills failed to submit reports in consecutive months.

Assuming, *arguendo*, that the probation supervisor was required to report Mills' infractions to the Parole Commission, a question remains as to whether the Commission would have revoked Mills' parole and required him to serve a prison term that extended beyond May 23, 1988.[5] The federal statutes in force during the relevant time period did not mandate revocation of parole for a parolee who violated the conditions of his parole.[6] Consistent with the federal statutes, Section 2.21–01 of the Parole Commission Rules effective November 4, 1985 provided, in pertinent part, that:

> The Commission has a range of sanctions available for dealing with administrative parole violations: reprimand, special conditions ... and revocation. The Commission preference is to use reimprisonment as a last resort, i.e., when other sanctions have been unsuccessfully tried or [sic] plainly inappropriate.

In *Morrissey*, the United States Supreme Court noted the discretionary nature of a parole revocation decision. The Court stated that,

> The first step in a revocation decision thus involves a wholly retrospective factual question: whether the parolee has in fact acted in violation of one or more conditions of his parole. Only if it is determined that the parolee did violate the conditions does the second question arise: should the parolee be recommitted

to prison or should other steps by taken to protect society and improve chances of rehabilitation? ... The second question involves the application of expertise by the parole authority in making a prediction as to the ability of the individual to live in society without committing antisocial acts ... Yet this second step, deciding what to do about the violation once it is identified, is not purely factual but also predictive and discretionary. *Morrissey*, 408 U.S. at 479–80, 92 S.Ct. at 2599–600.

In view of the discretion vested in the Parole Commission, to hold that action by Crowley would have led to Mills' parole revocation and have thus prevented the murder of Marsha Burger is too speculative to allow the imposition of liability on the Parole Commission for Crowley's omissions.

### D. Misinformation Regarding Mills' Appearance

■ On or before May 20, 1988, Robert Cardone of the Cincinnati Police Department contacted Crowley seeking information about Mills. At that time, Mills was a possible suspect in the February 1988 robbery of which he was eventually convicted. The suspect had been described as having a beard. Crowley told Cardone that he had never observed Mills with a beard. Plaintiff alleges that Crowley neglected to tell Cardone that he had not seen Mills at the time of the robbery. Cardone has submitted an affidavit in which he asserts that based on Crowley's information and differences in the description provided by the victim of the robbery and Mills' personal data, he did not display Mills' picture to witnesses.

---

**5.** In fact, a parole violation warrant was issued against Mills on October 18, 1984 for failing to submit supervision reports, failing to report to his probation supervisor, and failing to report a change of address. When Mills was arrested on this warrant one year later, he served a one-year prison term.

**6.** Title 18 U.S.C. Sec. 4214 authorized the Parole Commission to take several courses of action in response to a parole violation, including restoring the parolee to supervision; reprimanding

the parolee; modifying the parolee's conditions of parole; referring the parolee to a residential community treatment center; and formally revoking parole. The Commission was authorized to take any such action provided it took into account whether the parolee had been convicted of any crime subsequent to his release on parole and the seriousness thereof, and whether such action was warranted by the frequency or seriousness of the parolee's violation of any other conditions of his parole.

The probation supervisor did not violate a federal rule or statute by committing this alleged omission. In fact, the Court perceives no duty that the probation supervisor violated in this regard. Furthermore, the record does not contain any indication that Mills in fact had a beard at the time of the stabbing or that Crowley was incorrect when he stated that he had never seen Mills with a beard. Thus, even if this alleged omission were held to fall outside of the discretionary function exception, there is no basis for imposing liability for the error.

### E. Failure to Report Criminal Arrest and Conviction

 Section 2.42–02(a) of the Parole Commission Rules (November 4, 1985) mandates that,

> The probation officer shall immediately report to the Parole Commission the arrest of a releasee for a new criminal offense which is punishable by any term of imprisonment. Do not wait for conviction or final disposition to report the arrest but submit dispositional information as soon as it becomes available.

The Court agrees with plaintiff that the Parole Commission rules required Crowley to report Mills' criminal arrest and conviction for unlawful possession of a prescription drug. By failing to do so, Crowley violated a mandatory rule. The issue then becomes whether liability can be imposed on the Parole Commission for Crowley's omission.

### IV. Liability under Ohio Law

To prove a negligence claim under Ohio law, the claimant must establish three elements: (1) the existence of a duty on the part of the defendant; (2) a breach of that duty; and (3) injury proximately resulting from the breach. *Menifee v. Ohio Welding Products, Inc.*, 15 Ohio St.3d 75, 472 N.E.2d 707 (1984).

The parties disagree as to whether Ohio's "public duty rule" applies to this case. The rule is an exception to the general principle that a breach of a public safety employee's duty to the public is punishable by indictment only. The public duty rule requires the claimant to show that a special relationship existed between the injured party and the public safety employee in order to establish that the government owed a duty to the claimant that will support an individual action for damages. If a special relationship is established, an inquiry into the remaining elements of a negligence claim is necessary. *See Sawicki v. Village of Ottawa Hills*, 37 Ohio St.3d 222, 230, 525 N.E.2d 468 (1988).

The Court need not resolve the issue of whether the public duty rule applies in this case. Even if plaintiff is not required to show a special relationship between Marsha Burger and the Parole Commission, he has failed to establish the third element of a negligence claim—injury proximately resulting from the Parole Commission's breach of a duty—stemming from the Parole Commission's alleged violation of mandatory rules.

The only mandatory rule identified by plaintiff which defendant violated was that requiring the probation supervisor to report Mills' criminal arrest and conviction.[7] The Parole Commission did not learn of the arrest and conviction until March of 1987. Upon learning of same, the Commission advised Mills that a new conviction is the basis for the issuance of a warrant and his possible return to incarceration. The Commission also advised that should further illegal behavior or technical parole violations be reported, a warrant would issue and the possession offense be used as one of the charges. However, the Commission agreed to Crowley's recommendation that revocation not take place.[8] In light of this

---

7. Assuming, *arguendo,* that failure to follow Rule 2.47(c) governing imprisonment following the lodging of a detainer also constituted a violation of a mandatory rule, such violation cannot be held to have been a proximate cause of Marsha Burger's death for the reasons cited earlier in this opinion.

8. Plaintiff does not allege that defendant violated a mandatory rule by failing to revoke Mills' parole.

sequence of events, the Court has no basis for finding that had Crowley reported Mills' arrest at the time it occurred, Mills' probation would have been revoked and he would have therefore been in prison on the date Marsha Burger was murdered. Accordingly, plaintiff has failed to demonstrate that Crowley's failure to report the arrest was a proximate cause of Marsha Burger's death.

*Conclusions of Law*

(1) This Court has jurisdiction over plaintiff's claims under the Federal Tort Claims Act except to the extent such claims are based on defendant's exercise of, or failure to exercise, a discretionary function. 28 U.S.C. Secs. 1346(b) and 2680.

(2) A discretionary function is one that is a matter of choice for the employee and is not governed by a federal statute, regulation or policy which specifically prescribes the course of action for the employee to follow. *Berkovitz v. United States*, 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988).

(3) The decision of whether to release a prisoner on parole, what plan of supervision to devise and implement, and whether to revoke parole for parole violations are discretionary functions. *Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex*, 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979); *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); 18 U.S.C. Secs. 4213 and 4214.

(4) Whether to report James Mills' arrest for unlawful possession of a prescription drug was not a matter within the probation officer's discretion.

(5) Plaintiff has not carried his burden of establishing that failure to report said arrest was a proximate cause of Marsha Burger's death.

(6) Assuming, *arguendo*, that defendant violated a mandatory rule by failing to lodge a detainer against Mills and to imprison him for his 1975 parole violation, plaintiff has not carried his burden of establishing that the omission was a proximate cause of Marsha Burger's death.

(7) The Court lacks subject matter jurisdiction over plaintiff's remaining claims that defendant negligently released James Mills on parole, negligently supervised Mills on parole, and negligently failed to move to terminate Mills' parole. *Myslakowski v. United States*, 806 F.2d 94, 96 (6th Cir.1986), *cert. denied*, 480 U.S. 948, 107 S.Ct. 1608, 94 L.Ed.2d 793 (1982).

(8) Plaintiff has not set forth any facts in support of his claim that defendant negligently supervised Lewis Thomas on parole and negligently failed to move to terminate Thomas' parole.

It is therefore ORDERED that summary judgment be GRANTED in favor of defendant.

IT IS SO ORDERED.