806 F.2d 94
 55 USLW 2372
 Matt MYSLAKOWSKI, Individually and as Next Friend of Marie
Myslakowski, a Minor (85-1527), and Betty Galanos, as
Personal Representative of the Estate of Tina Marie Kelly,
Deceased (85-1528), Plaintiffs-Appellees,
v.
UNITED STATES of America, Defendant-Appellant.
 Nos. 85-1527, 85-1528.
 United States Court of Appeals,
Sixth Circuit.
 Argued Aug. 15, 1986.
Decided Nov. 26, 1986.
 
 Ellen G. Ritteman, Asst. U.S. Atty., Detroit, Mich., Gary M. Maveal, Asst. U.S. Atty. (argued), John P. Schnitker, Robert S. Greenspan, U.S. Dept. of Justice, Washington, D.C., for defendant-appellant.
 Allen S. Miller, Gary C. Berger, Detroit, Mich., Mikael G. Hahner (argued), for plaintiffs-appellees.
 Before ENGEL, KRUPANSKY and RYAN, Circuit Judges.
 RYAN, Circuit Judge.
 
 
 1
 These are personal injury and wrongful death actions brought under the Federal Tort Claims Act, 28 U.S.C. Sec. 1346(b). The district court entered judgment for the plaintiffs after rejecting the government's contention that it was entitled to immunity under the discretionary function exception to governmental tort liability in 28 U.S.C. Sec. 2680(a). We reverse.
 
 I.
 
 2
 These cases arise out of an accident that occurred on October 13, 1979, when a jeep motor vehicle, owned by Robert Pace and formerly owned by the United States Postal Service, collided with another vehicle and rolled over, killing one of the occupants of the Pace vehicle and injuring others. Marie Myslakowski, who was injured, and Tina Marie Kelley, who died following the accident, were passengers in the Pace vehicle which was being driven by 17-year-old Renee Pace. Robert Pace, Renee's father, purchased the vehicle in August of 1979 from Peter Plummer. Plummer acquired it from John Greenway, who originally purchased it from the Postal Service in 1975.
 
 
 3
 Plaintiffs claimed that the government was negligent in (1) selling the vehicle in question to the public, (2) failing to affix proper warnings on the vehicle, and (3) designing the vehicle with dangerously low rollover resistance. The district court dismissed the design claim after concluding that the plaintiffs failed to prove that the government was responsible for the design of the jeep. In opposition to the remaining claims, the government asserted that it is immune from liability because its acts involved the exercise of a discretionary function. Rejecting this contention, the district court found the government negligent in failing to warn the jeep's users of its high propensity to roll over, when used as a passenger vehicle. 608 F.Supp. 360 (E.D.Mich.1985).
 
 
 4
 There was evidence before the district court that the government was aware of the so-called Cornell Report[1] which is an extensive study of the rollover propensity of vehicles of the same type involved in this case. The report contained test results from which it was specifically concluded that the vehicles tended to roll over more often and more easily than ordinary passenger automobiles.
 
 
 5
 In this appeal, the government contends that it is immune from liability for any negligence associated with the sale of the jeep; that even if it were not immune from liability, its failure to give a written warning against use of the jeep as a passenger vehicle was not negligence; and that even if its failure to issue such written warning was negligence, such negligence was not a proximate cause of the injuries and death that occurred in the accident.
 
 
 6
 We have no occasion to address the latter two contentions because we conclude that under 28 U.S.C. Sec. 2680(a), the government is immune from liability for the acts and omissions complained of, and that the district court's contrary conclusion is error requiring reversal.
 
 II.
 
 7
 At common law, the United States, its agencies and employees, were exempt from suits brought by its citizens. Cohens v. Virginia, 19 U.S. (6 Wheat.) 264, 411-12, 5 L.Ed. 257 (1821). In Sec. 1346(b) of Title 28 of the United States Code, however, the government partially waived its sovereign immunity from tort liability. That section provides:
 
 
 8
 "Subject to the provisions of chapter 171 of this title, the district court ... shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligence or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."But an exception to this waiver is found in Sec. 2680 of chapter 171 of Title 28 which provides:
 
 
 9
 "The provisions of this chapter and section 1346(b) of this title shall not apply to--
 
 
 10
 "(a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."
 
 
 11
 Thus, the government's waiver of sovereign immunity in Sec. 1346(b) does not apply when the challenged act or omission involves a discretionary function or duty. Indeed, "[i]f a case falls within the statutory exceptions of 28 U.S.C. Sec. 2680, the court lacks subject matter jurisdiction." Feyers v. United States, 749 F.2d 1222, 1225 (6th Cir.1984), cert. denied, 471 U.S. 1125, 105 S.Ct. 2655, 86 L.Ed.2d 272 (1985).
 
 
 12
 The vehicle involved in the accident in this case was a Jeep Dispatcher 100 Model DJ-5A designed at the order of the Postal Service and used for mail delivery purposes. In its original condition, it was a right-hand drive vehicle with a letter tray positioned to the left of the driver, and storage space behind the driver and letter tray. The front right and left side doors slid open horizontally, and access to the rear of the vehicle was through two outward opening doors. A cab enclosed the entire vehicle.
 
 
 13
 Before Mr. Pace bought the jeep, it had been modified by removal of the letter tray and installation of a seat to the left of the driver. In addition, the entire interior of the vehicle had been covered with carpeting, including all of the dashboard except for the instruments.
 
 
 14
 The Postal Service sold the jeep to the original purchaser, Mr. Greenway, as part of a program to dispose of its surplus property. The authority for the sale is found in 39 U.S.C. Sec. 401(5), enacted in 1970, which provides:
 
 
 15
 "The Postal Service shall have the following general powers:
 
 
 16
 * * *
 
 
 17
 * * *
 
 
 18
 "(5) to acquire, in any lawful manner, such personal or real property, or any interest therein, as it deems necessary or convenient in the transaction of its business; to hold, maintain, sell, lease or otherwise dispose of such property or any interest therein and to provide services in connection therewith and charges therefor...."
 
 
 19
 Following the Post Office Department's decision to sell thousands of surplus jeeps, the department adopted and promulgated a Central Regional Instruction regarding sale of vehicles and a Central Regional Memorandum instructing postal district managers on the methods of sale (auction, spot sale, or sealed bid), and containing the following note:
 
 
 20
 "All vehicles are to be advertised for sale as-is-where-is with customers given an opportunity to inspect the vehicles before bidding. Vehicles may be started but not driven by prospective buyers. Vehicle Maintenance history record (form 4620) may be shown to prospective buyers and given to the individual making the actual purchase. Limit number of vehicles offered for sale to fifteen for best results." (Emphasis added.)
 
 
 21
 The district court found that the departmental decision to dispose of the jeep was a "policy-based discretionary" decision:
 
 
 22
 "[T]he Government's decision to sell the jeeps to the public was clearly a policy based discretionary function which is specifically within the purview of the execution of a statute and regulation (39 U.S.C. Sec. 401(5) and 39 C.F.R. Sec. 211.2).... The evidence before this Court indicates that, in making that decision, the Government considered the economic need to operate efficiently by recouping some of its expenditures through the sale of surplus goods.... If the threat of tort liability hung over the Government for the mere decision to sell such surplus goods, it would improperly impede a Government function and, thus, put the Courts in the position of interfering with policy decisions which have been properly reserved to another branch."
 
 
 23
 608 F.Supp. at 371.
 
 
 24
 The court then distinguished between the "decision to sell the jeep" and "the decision as to the manner of the sale of [the] jeep," declaring that the latter was a "separate matter." 608 F.Supp. at 371. The district court determined that "the decision not to warn subsequent purchasers that the jeep, if used as a passenger vehicle, had a dangerous risk of rollover was not the exercise of a discretionary function," and that no immunity attached for the failure to give that warning. 608 F.Supp. at 372.
 
 
 25
 The distinction, according to the district court, is that the government made no executive level discretionary decision--no policy-based choice--"not to warn subsequent purchasers of the dangers of use of the jeep as a passenger vehicle." According to the court, the failure of the Postal authorities to require that warnings be given was not a deliberate decision at all, but a mere omission, an act of default, attributable to department shortsightedness. Since no discretionary decision was taken--no "political, economic or social policy" choices made--concerning warnings, the statutory exception for such decisionmaking is inapplicable. The "decision" to give no warnings, the court held, "occurred in the course of the operational task of detailing the logistics of the sale and thus, was the mere omission of an operational task."
 
 
 26
 Having thus bifurcated what it found to be the Postal Service's discretionary decision to dispose of the jeeps at public sale as part of its program to sell surplus property, from what it characterized as the non-discretionary "operational task of detailing the logistics of the sale" on the street, the court determined that, under Michigan law, the government breached its common law duty to warn against the use of the jeep as a passenger vehicle.
 
 
 27
 We think the learned district court erred in concluding that the government is not immune from liability under the discretionary function exception to the waiver of liability for tortious acts.
 
 III.
 
 28
 The critical error in the trial court's analysis is in its conclusion that because the evidence does not show that the departmental policymakers evaluated the pros and cons of requiring that a warning be given concerning the rollover propensity of the jeep and then made a discretionary decision not to give such warnings, it therefore follows that no discretionary decision, of the kind contemplated by Sec. 2680(a), was made concerning the terms, conditions, and "manner" of sale of the jeep. Thus, the statutory exception to the waiver of immunity for such decisions is inapplicable. We respectfully disagree.
 
 
 29
 The fact that, in making the discretionary policy judgment to sell the jeeps "as-is-where-is," the government officials may not have evaluated some or all of the dangers associated with the use of jeeps as passenger vehicles and may have given no thought to the need for warnings even in view of the Cornell Report, is not to say that the considerations unaddressed are therefore outside the ambit of the discretionary judgment exception to the statute and a basis for establishing tort liability.
 
 
 30
 Stated otherwise, even the negligent failure of a discretionary government policymaker to consider all relevant aspects of a subject matter under consideration does not vitiate the discretionary character of the decision that is made.
 
 
 31
 Indeed, it is, in part, to provide immunity against liability for the consequences of negligent failure to consider the relevant, even critical, matters in discretionary decisionmaking that the statutory exception exists. If it were otherwise, a judgment-based policy determination made at the highest levels, to which all would concede that the statutory exception applies (the decision to sell surplus jeeps), would result in no immunity if the decision could be shown to have been made without consideration of important, relevant factors, or was a decision negligently reached. If that reasoning were sound, the discretionary function exception would be inapplicable in every case in which a negligent "failure to consider" a relevant risk could be proved.
 
 
 32
 Here, the decision to sell the vehicles included consideration and adoption of certain limiting conditions: the sale was to be "as-is-where-is." That included, inferentially, no test driving, no mechanical inspection, no refurbishing or reconditioning, no express warranties, and certainly no warnings.
 
 
 33
 By determining that the lower level postal employee who actually carried out the mechanics of the sale accepted the purchase money, and handed over the keys to the vehicle, committed an actionable tort by not going beyond the "as-is-where-is" policy decision of his superiors, the district court effectively nullified the immunity with which Congress insulated the policy decision of the postal department officials who neither permitted nor authorized such warnings. Arguably, it was negligent for the Postal Department policymakers to have failed to require warnings, but it is for just such negligent decisionmaking that Congress has determined that the government is to be immune from tort liability.
 
 
 34
 As the Court put it in U.S. v. S.A. Empressa De Viacao Aerea Rio Grandense (Varig Airlines), 467 U.S. 797, 820, 104 S.Ct. 2755, 2768, 81 L.Ed.2d 660 (1984): "Judicial intervention in such decisionmaking through tort suits would require the courts to 'second guess' the political, social, and economic judgments of an agency exercising its regulatory function. It was precisely this sort of judicial intervention in policymaking that the discretionary function exception was designed to prevent."
 
 
 35
 Of the cases cited to us by the appellee in support of the trial court's conclusion, three were particularly relied upon by the district court and warrant our attention.
 
 
 36
 In Reminga v. United States, 631 F.2d 449 (6th Cir.1980), a panel of this court held the government responsible in damages when a small aircraft struck a guy wire that stabilized a 1720-foot tower. It was shown that, following a discretionary decision by the Federal Aviation Administration to issue aeronautical navigation charts pursuant to its authority to "order the use of the navigable air space," the agency negligently failed to accurately locate the tower on a chart it issued.
 
 
 37
 The import of our holding in Reminga is that once having exercised the discretion to issue navigational charts, the government is accountable for its negligence in failing to locate hazards accurately on the charts it publishes. Erroneously locating navigational hazards on its charts, like running a red light with a motor vehicle and causing an accident, involves no discretionary function or duty. Having undertaken, in its discretion, to issue charts locating navigational hazards at all, the FAA was liable for doing so carelessly.
 
 
 38
 That is not the case before us, however. Here, the Post Office Department discretionary policy decision to sell the surplus jeep vehicles "as-is-where-is" included no requirement that warnings be given concerning the rollover propensity of the vehicle. Therefore, the failure, whether purposeful or negligent, to require that such warning be given was part of the discretionary decision itself.
 
 
 39
 Similarly, in Somerset Seafood Co. v. United States, 193 F.2d 631 (4th Cir.1951), the government was held liable for damages incurred when an oyster boat became stranded on the submerged hull of an old battleship that had been sunk by the United States in the Chesapeake Bay in 1911.
 
 
 40
 The Fourth Circuit held that the plaintiff had stated a claim under the Federal Tort Claims Act. Id. at 633. Responding to the government's contention that it was not liable for the breach of a discretionary duty to mark the wreck, the court stated that the government's duty under the Wreck Acts, 33 U.S.C. Secs. 409, 736, 14 U.S.C. Sec. 86, to either remove or mark the wreck was mandatory and therefore not within the discretionary function exception. The court also stated:
 
 
 41
 "In addition to this, we think that even if the decision to mark or remove the wreck be regarded as discretionary, there is liability for negligence in marking after the discretion has been exercised and the decision to mark has been made. There is certainly no discretion to mark a wreck in such a way as to constitute a trap for the ignorant or unwary rather than a warning of danger."
 
 
 42
 Somerset Seafood, 193 F.2d at 635.
 
 
 43
 In Indian Towing Co. v. United States, 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955), the government was charged with negligence in permitting a lighthouse light to become extinguished and in failing to warn the tug "Navajo" that the light was not functioning. The government conceded, however, that the case did not involve the discretionary function exception of 28 U.S.C. Sec. 2680, and the Court discussed 28 U.S.C. Sec. 2674, a different statutory provision altogether. Indian Towing, 350 U.S. at 64, 76 S.Ct. at 124. In passing, the Supreme Court noted that once the Coast Guard "exercised its discretion to operate a light on Chandeleur Island and engendered reliance on the guidance afforded by that light, it was obligated to use due care to make certain that the light was kept in good working order...." Id. at 69, 76 S.Ct. at 126.
 
 
 44
 In each of these cases, the government exercised its discretion: It decided to issue an aeronautical chart in Reminga, to mark instead of remove an old wreck in Somerset Seafood, and to operate a lighthouse on Chandeleur Island in Indian Towing. These decisions, the first two of which were entirely discretionary and the third mandated by statute, once having been made, required the government to act with due care in carrying them out. In the case before us, had the postal authorities decided, in their discretion, to require that the public be warned of the danger of using the postal jeeps as passenger vehicles, they undoubtedly would have been obligated to use due care to warn of the rollover propensity of the vehicles. However, omitting to require that any warnings be given concerning the performance of jeep vehicles, whether purposeful or negligent, was an inherent part of the discretionary decision to sell the vehicles "as-is-where-is." It gives rise to no liability.
 
 
 45
 Finally, we observe that three other courts have considered the very question we address today in connection with accidents involving the same type of jeep vehicles, and each has reached the conclusion we have reached. See Ford v. American Motors Corp., 770 F.2d 465 (5th Cir.), reh'g denied, 776 F.2d 1048 (1985); Shirey v. United States, 582 F.Supp. 1251 (D.S.C.1984); Louviere v. AM General Corp., 620 F.Supp. 6 (W.D.La.1985). In all of these cases, the courts determined that the failure to warn subsequent purchasers of the jeeps' rollover propensities was an omission within the purview of the discretionary decisionmaking authority of the government for which Congress has provided immunity against liability under 28 U.S.C. Sec. 2680(a). Although not bound by these decisions, we cite them as cases consistent with our reasoning today.
 
 
 46
 The decision of the district court is reversed.
 
 
 
 [1]
 Cornell Aeronautical Laboratory, Inc., Test and Evaluation of a 1/4 Ton Light Delivery Vehicle, July 1971