WESTERN WORLD INSURANCE
COMPANY, Plaintiff,

v.

Clifford DANA, an individual Dora Dana, an individual, and Santa Fe Pacific Realty Company, a corporation, Defendants.

CATELLUS DEVELOPMENT CORPORATION, a corporation, Counter-claimant,

v.

WESTERN WORLD INSURANCE
COMPANY, Counter-claim Defendant.

No. Civ. S–90–1374 WBS/GGH.

United States District Court,
E.D. California.

June 20, 1991.

Donald E. Dorfman, Lillick & Charles, San Francisco, Cal., for plaintiff.

John F. Barg, Paul M. Zieff, Landels, Ripley & Diamond, San Francisco, Cal., for counter-claimant.

Thomas L. Gill, Favarro, Lavezzo, Gill, Carpetti & Heppell, Vallejo, Cal., for defendants.

## MEMORANDUM AND ORDER (AMENDED)

SHUBB, District Judge.

### I. BACKGROUND

Western World Insurance Co. ("Western") filed this action for declaratory relief on November 5, 1990 seeking declarations that it owes no duties of defense or indemnity to any defendant with respect to two liability insurance policies it issued to defendants Clifford and Dora Dana ("the Danas") for property located in Collinsville, California ("the Collinsville site"). The parties have filed counter-motions for summary adjudication which are now before the court. Jurisdiction is based on 28 U.S.C. § 1332 (diversity) and the court applies the law of the forum state. *Ah Moo v. A.G. Becker Paribas, Inc.*, 857 F.2d 615, 620 (9th Cir.1988). Because the insured property is located in California, the court applies California law. *See e.g., Insurance Co. of Pa. v. Associated Int'l Ins.*, 922 F.2d 516, 520 (9th Cir.1990).

A. *The Undisputed Facts.*

For purposes of these motions, the parties agree to the following undisputed facts. Since 1969 counter-claimant and defendant Catellus Development Corporation ("Catellus") has leased the Collinsville site to the Danas.[1] Beginning in 1981, the Danas sublet a portion of the property including a barn and the area around it to a Richard Armor. Western issued two general liability policies to the Danas designating the Collinsville site as the "insured premises" and naming Catellus as an "Additional Insured." The policies covered the period from December 4, 1982 through December 4, 1985.

On April 20, 1989, Solano County officials initiated an investigation in response to a complaint about possible pesticide dumping at the property. They discovered an enormous and illegal stockpile of hazardous waste and chemical material inside and around the barn. These wastes were either explosive, highly flammable or otherwise extremely unstable, or known to be highly toxic.

The investigators found that the chemicals were poorly contained and stored in ways that were potentially disastrous; highly reactive chemicals were discovered in dangerous proximity to incompatible materials. Chemical spills were discovered in and around the barn. Other chemicals had been and still were escaping into the environment in vapor form.

The county officials became concerned that the conditions at the site posed a serious threat to the lives and property of the residents in the area due to the substantial risk of fire or explosion and the concomitant release of poisonous gas. Officials were also concerned that environmental contamination had occurred and would continue. The County of Solano issued a Declaration of Emergency because of the "grave danger to the lives and property" of the people in the area. Personnel from the Fire Department and Sheriff's Office went door to door and urged residents to evacuate until the situation stabilized. Some residents left their homes.

The District Attorney's Office and the Department of Environmental Management demanded that Catellus take immediate action to mitigate the public safety threat and to arrest the ongoing contamination. Catellus was also directed to conduct an investigation to determine the extent of site contamination and to take whatever remedial steps might be necessary. The District Attorney's office also advised Catellus that unless it complied with these directives, legal proceedings would be initiated.

Catellus engaged two firms—Crosby and Overton, an environmental services firm, and Levine*Fricke, an environmental consulting firm—to investigate the extent of the contamination and clean it up. They discovered and removed contaminated soil which posed a threat to groundwater. Government officials acknowledge that Catellus's cleanup operations were essential to eliminate a serious and immediate threat to the lives and property of area residents and were necessary to prevent a substantial threat of further environmental damage, including damage to groundwater. Catellus succeeded in arresting the migration of chemicals contaminants before they reached groundwater or neighboring property.

Catellus incurred expenses of over $1,000,000 to comply with government directives. These sums were spent to remove and dispose of the chemicals; reimburse evacuated residents for alternative housing; investigate and remedy site contamination; and reimburse government agencies for response and oversight expenses.

B. *Key Provisions of the Insurance Contracts.*

The policies at issue provide that
The Company will pay on behalf of the insured all sums which the insured shall

1. Catellus was formerly named and sued herein as Santa Fe Pacific Realty Corporation. The

Danas have joined in Catellus' motion.

become legally obligated to pay as damages because of

A.  bodily injury or

B.  property damage

to which this insurance applies, caused by an occurrence and arising out of the ownership, maintenance or use of the insured premises....

"Property damage" is defined as

(1) physical injury to or destruction of tangible property which occurs during the policy period ... or

(2) loss of use of tangible property which has not been physically injured or destroyed provided such loss is caused by an occurrence during the policy period. "Occurrence" means an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured.

Finally, the policy provides that: This insurance does not apply:

. . . .

(k) to property damage to

(1) property owned or occupied by or rented to the insured. ["Exclusion K."]

## II.  DISCUSSION

Western argues that in the absence of any off-site property damage or groundwater contamination, all of the property damaged was confined to property "owned or occupied by or rented to the insured" and therefore excluded from coverage by virtue of Exclusion K. Defendants argue that Exclusion K would not preclude them from recovering governmentally compelled cleanup costs that posed a risk to the public and other third parties. The California Supreme Court has held that governmentally compelled costs to cleanup property damage caused by hazardous materials are "sums which the insured [is] ... legally obligated to pay as damages because of property damage" under a comprehensive general liability policy. *AIU Ins. v. Superior Court,* 51 Cal.3d 807, 824–843, 274 Cal.Rptr. 820, 799 P.2d 1253 (1990). But unlike the Western policies, the policy under consideration in *AIU* did not "specify

that coverage hinges on the nature or location of property damage". The sole issue for the court's consideration is whether Exclusion K precludes coverage.

Summary adjudication is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Poller v. Columbia Broadcast System,* 368 U.S. 464, 467, 82 S.Ct. 486, 488, 7 L.Ed.2d 458 (1962); *Loehr v. Ventura County Community College Dist.,* 743 F.2d 1310, 1313 (9th Cir.1984).

### A.  *Principles of Insurance Policy Interpretation.*

The statutory rules of contract interpretation apply to insurance contracts. *AIU Ins.,* 51 Cal.3d at 821–22, 274 Cal.Rptr. 820, 799 P.2d 1253; California Civil Code §§ 1635–62. The "clear and explicit" meaning of the contract provisions, as interpreted in their "ordinary and popular sense," controls the court's interpretation. *AIU Ins.,* 51 Cal.3d at 822, 274 Cal.Rptr. 820, 799 P.2d 1253 (quoting Cal.Civ.Code § 1644). If that meaning is not ambiguous, the court's inquiry ends there. *Id.* If the language is ambiguous, the court shall attempt to resolve the ambiguity by determining "the sense the promisor (i.e., the insurer) believed the promisee understood them at the time of formation." *Id.* If that inquiry does not resolve the uncertainty, ambiguities in an insurance contract are resolved "in favor of coverage." *Id.*

### B.  *Interpretation of Exclusion K.*

■ No California appellate court has yet addressed the precise question at issue; that is, whether governmentally mandated costs incurred to remove hazardous materials before the migration of toxic materials reaches adjacent land, or the groundwater, can be recovered under a comprehensive general liability insurance policy with an "owned property" exclusion. The court must therefore determine what the California Supreme Court would determine under

the circumstances. *See, e.g., Insurance Co. of Pa.*, 922 F.2d at 520–21.

Catellus relies on *Intel Corp. v. Hartford Acc. & Indem. Co.*, 692 F.Supp. 1171 (N.D.Cal.1988). *Intel* held that under California law, the identical "owned property" exclusion did not preclude the insured from recovering governmentally mandated cleanup costs because "the water beneath the subject property has been polluted and lives and property nearby have been placed in peril." *Id.* at 1182. The court so held on two alternate grounds. First, the court reasoned that under California law, groundwater was the property of all Californians and thus constituted damage to third parties sufficient to "eliminate Exclusion K." *Id.* at 1183. Second, the court reasoned that the condition of the property was so dangerous as to be "tantamount" to a "public nuisance;" the response costs incurred were thus necessary to "protect the public health and welfare and the environment" and therefore not "encompassed within Exclusion K." *Id.* at 1184.

In the absence of groundwater contamination in the instant case, Catellus urges the court to extend *Intel* by analogy and to find that other natural resources such as soil and air are the property of all Californians under California law. Alternately, Catellus argues that the Collinsville site constituted a "public nuisance" and therefore mandated cleanup costs are "not encompassed within Exclusion K." Catellus further contends that costs incurred to mitigate third party damages are not precluded by Exclusion K.

## C. *Western's Motion.*

Western's motion is confined to whether Exclusion K precludes recovery under the policies for property damage to the soil. Without deciding whether the California Supreme Court would adopt the reasoning of *Intel*, recognizing public ownership of all underground water and therefore injury not confined to property owned by the insured, the court believes that the highest state court would not extend the analogy to soil. The soil constituting one's real property has never been considered a shared "public resource" in the way that water has. Indeed, defendants have not cited any authority for the proposition that California recognizes public ownership of soil. Nor would this court anticipate that the California Supreme Court would declare that soil constitutes public property. This is not to deny that the state and federal government have an interest in the soil located on private property. *See Georgia v. Tennessee Copper Co.*, 206 U.S. 230, 237, 27 S.Ct. 618, 619, 51 L.Ed. 1038 (1907) ("[T]he state has an interest independent of and behind the titles of its citizens, in all the earth and air within its domain."). The body of state and federal environmental regulations attests to this interest. However, a property owner has never enjoyed the ability to do what he will with his property free from governmental restraint. The fact that the government ordered Catellus to rectify a condition of its property before it damaged adjacent property, or migrated into the common water supply, does not change the fact that the damage was confined to the Collinsville site. Interpreting the words of the policy in their usual and ordinary meaning, Exclusion K excludes coverage for "property damage to property owned or occupied by or rented to the insured."

For the same reasons, the court concludes that the California Supreme Court would reject defendants' "public nuisance" argument, and therefore reject *Intel* to that extent. The fact that the Collinsville site may have constituted a "public nuisance" does not entail that costs associated with dismantling the nuisance will be covered by a liability insurance policy. The terms of the policy itself must control. Under the terms of the contract, insurance is not available until property damage has occurred which is covered by the policy.

The court is not unmindful of the existence of considerations that favor incentives for prompt cleanup of environmental hazards. However, the court is not empowered to rewrite contracts in order to further desirable public policy. Therefore the court finds that Exclusion K precludes recovery under the policies for damage to the soil. Since Western's motion is confined to

this one issue, Western's motion is granted in full.

### D. Remaining Issues in Defendants' Motion.

#### 1. Damage Suffered by Neighbors.

The parties agree that neighbors who were evacuated from their homes incurred "loss of use of tangible property which has not been physically injured or destroyed" within the meaning of the policies. Exclusion K, therefore, would be inapplicable in the event the "loss of use" is determined to be "property damage" under the policy.

#### 2. Mitigation Damages for Damage to Soil.

■ Mitigation damages are only available to "mitigate against the further occurrence of an *insured loss.*" *City of Laguna Beach v. Mead Reinsurance Corp.*, 226 Cal.App.3d 822, 833–34, 276 Cal.Rptr. 438 (1990) ("[n]ecessary to a recovery ... is the existence of *an insured loss*"). Costs incurred to remedy the soil contamination are not recoverable mitigation costs because the damage was confined to property owned by the insured and therefore did not constitute an insured loss. Therefore, Exclusion K precludes recovery for the damage to the soil as mitigation damages.

#### 3. Other Issues.

The court is unable to adjudicate all remaining issues due to the existence of controverted material facts and/or insufficient factual basis.

IT IS THEREFORE ORDERED that defendants' and counter-claimant's motion for summary judgment be, and the same is, hereby denied.

IT IS FURTHER ORDERED that plaintiff's motion for summary judgment be, and the same is, hereby granted on the limited issue of the applicability of Exclusion K to soil contamination. Because this case is not fully adjudicated on plaintiff's motion, see Fed.R.Civ.P. 56(d), plaintiff is not entitled to entry of judgment at this time.