**McDONALD'S CORPORATION,
a Delaware corporation,
Plaintiff,**

v.

**Charles Bert WILSON, et al., Defendants.**

**Charles Bert WILSON and Nancy Carol
Wilson, husband and wife, Defendants/Third–Party Plaintiffs,**

v.

**MOBIL OIL CORPORATION, a New
York corporation, dba General Petroleum, Third–Party Defendant.**

**Civ. No. 90–6079–TC.**

United States District Court,
D. Oregon.

Feb. 23, 1993.

Mark D. Whitlow, Richard A. Hayden, Christopher L. Reive, Bogle & Gates, Portland, OR, for McDonald's Corp.

John T. Foss, William A. McDaniel, Foss, Whitty, Littlefield & McDaniel, and George T. Gant, Thom Gant & Whitty, Coos Bay, OR, for Charles Bert Wilson and Nancy Carol Wilson.

John D. Burns, Jerry B. Hodson, Miller, Nash, Wiener, Hager & Carlsen, Portland, OR, for Mobil Oil Corp.

## OPINION AND ORDER

COFFIN, United States Magistrate Judge:

This is a diversity action which McDonald's Corporation initiated in federal court to recover its clean-up costs on a petroleum-contaminated lot it had purchased in Coos Bay, Oregon for the purpose of constructing a fast-food restaurant. This action was brought pursuant to ORS 465.003, et seq. [known as the Oregon Superfund Statute].

The background to this case can be summarized as follows:

McDonald's purchased its restaurant site from Charles and Nancy Wilson in 1989. The Wilsons had owned the property since 1971. From 1945–1963, Mobil had operated a petroleum station on the property. Charles Wilson had been the operator of this Mobil station for a short period of time in 1955. Between 1963 and 1971, Tom McClure (who is not a party to this action) operated a used car dealership on the property, and used the pumps from the former Mobil station to service his vehicles. McClure added a 3000 gallon Underground Storage Tank (UST) in 1963.

By the time McDonald's purchased the site, the service station had been long since removed. There is evidence that McDonald's, however, was aware of the possibility of USTs being on the site, but chose to purchase the lot at any rate and proceed with the project.

In 1990, when McDonald's excavated the site in preparation for constructing its restaurant, it discovered three buried USTs and encountered petroleum contamination in the soil. McDonald's punctured one of the USTs in the process of excavating the site. McDonald's then proceeded to clean up the site, incurring costs of approximately $178,000 in

doing so. It then brought suit in federal court against the Wilsons for recovery of its clean-up costs pursuant to the Oregon Superfund Statute.

The Wilsons, in turn, counterclaimed against McDonald's [based in part upon the contention that when they sold the lot to McDonald's, the corporation had agreed to hold the Wilsons harmless for any contamination found on the site] and filed a third-party complaint against Mobil. McDonald's thereafter filed a direct claim against Mobil and Mobil filed counterclaims against the Wilsons and McDonald's.

Eventually, the parties settled all issues in the case, with the exception of claims for attorney fees[1] under the state superfund statute. The issue before the Court is whether the Oregon Superfund Statute authorizes recovery of attorney fees and, if so, the amount of fees which is reasonable and recoverable in this case.

### Analysis

■ The Oregon courts adhere to the general rule that attorney fees are not recoverable by the prevailing party absent authorization by a statute or contract. *See Samuel v. Frohnmayer*, 308 Or. 362, 779 P.2d 1028 (1989). As there was no contract between McDonald's and Mobil regarding this matter, the issue is whether the Oregon legislature authorized the recovery of attorney fees and other litigation costs pursuant to this statutory scheme for dealing with hazardous waste and associated clean-up costs.

It is appropriate to briefly describe the remedies and liabilities create by Oregon's Superfund Statute:

Oregon law imposes strict liability on various parties for "remedial action costs" incurred by the state or private parties to clean up pollution:

The following persons shall be strictly liable for those remedial action costs incurred by the state or any other person that are attributable to or associated with a facility and for damages for injury to or destruction of any natural resources caused by a release:

(a) Any owner or operator at or during the time of the acts or omissions that resulted in the release.

(b) Any owner or operator who became the owner or operator after the time of the act or omissions that resulted in the release, and who knew or reasonably should have known of the release when the person first became the owner or operator.

(c) Any owner or operator who obtained actual knowledge of the release at the facility during the time the person was the owner or operator of the facility and then subsequently transferred ownership or operation of the facility to another person without disclosing such knowledge.

(d) Any person who, by any acts or omissions, caused, contributed to or exacerbated the release, unless the acts or omissions were in material compliance with applicable laws, standards, regulations, licenses or permits.

(e) Any person who unlawfully hinders or delays entry to, investigation of or removal or remedial action at a facility.

ORS 465–255(1).

"Remedial action costs" are defined as those

. . . reasonable costs which are attributable to or associated with a removal or remedial action at a facility, including but not limited to the costs of administration, investigation, *legal or enforcement[2] activities*, contracts and health studies. (emphasis added).

ORS 465.200(16).

Under this statutory scheme, the state agency in charge of enforcing its provisions has several options available to it, including

---

**1.** McDonald's interprets the term "attorney fees" broadly to include all costs of litigation. Mobil asserts that the term refers only to reasonable fees charged McDonald's by its trial counsel.

**2.** Only the state has enforcement authority under the statute. See: ORS 465.260(4) and (5). Private parties, by contrast, may initiate cost recovery actions, but may not seek to "enforce" removal or remedial action orders. Thus the issue here is whether the term "legal activities" encompasses litigation costs.

taking remedial action itself at a contaminated site and thereafter seeking reimbursement from any liable party or issuing an order requiring a liable party to conduct the remedial action. ORS 465.260. In addition, a private party incurring clean-up costs (either on its own initiative or in response to the state's order) may seek reimbursement or contribution from other liable private parties. ORS 465.255(5)(b).

In this case, as noted, McDonald's opted to clean up the site at its own expense, ultimately seeking reimbursement for those costs from the Wilsons and Mobil. All "remedial action costs" associated with the actual clean-up of the site have been settled among the parties. What remains, as between McDonald's and Mobil,[3] is the issue of whether the litigation expenses incurred by McDonald's in the prosecution of this lawsuit are included within the definition of "remedial action costs" and thus recoverable as well.

It is noteworthy that the litigation costs incurred by McDonald's in pursuing this action have greatly exceeded the approximately $178,000 that was expended to eliminate the contamination at the restaurant site; ironically, McDonald's litigation costs fueled the perpetuation of litigation as opposed to an early settlement among the parties.

To elaborate, neither the Wilsons nor Mobil's defenses in the action could be characterized as frivolous: Mobil had not operated a station at the site since 1963, and it was McDonald's burden to establish that a release of petroleum had occurred during the time period of Mobil's or the Wilsons' possession of the property or that some other basis existed to impose strict liability on them. The Wilsons, in addition to contesting whether a release occurred during their possession of the site, asserted that McDonald's was aware of the possibility of contamination and released them from any obligation to contribute to potential clean-up costs. Furthermore, an issue was presented as to the extent McDonald's contributed to contamination on the site when it punctured a UST during the

excavation process. In short, I find that, despite the assertions by McDonald in its petition for attorney fees that Mobil unreasonably failed to concede liability and thus caused needless litigation expenses, the defense presented by Mobil raised legitimate, triable issues.

In February 1992, the parties engaged in a formal settlement conference before the Honorable Owen Panner, U.S. District Judge. At that point in time, McDonald's was seeking reimbursement for approximately $220,000 in litigation costs, in addition to $178,000 in actual clean-up costs. Not surprisingly, Mobil and the Wilsons were unwilling to accept responsibility for McDonald's attorney fees, contesting that the Oregon Superfund legislation authorizes the recovery of such fees.[4] As this is a question of first impression under Oregon law, the attorney fee issue prevented realistic prospects of settlement at the conference before Judge Panner.

This court then conducted a second settlement conference on 11/4/92 and 11/12/92, at the request of the parties and shortly before trial was to commence before U.S. District Judge Michael Hogan. During the interim between the February and November settlement conferences, McDonald's attorney fees and other litigation costs had risen to approximately $403,000. The soaring costs of litigation had far surpassed the original amount in controversy, and had become the major issue in the case.

During the November settlement discussions, the Court suggested and the parties agreed to segregate the clean-up costs from the attorney fees for purposes of attempting to reach a settlement, with the parties reserving their right to litigate the latter issue. After this proposal was accepted, the clean-up costs were fully settled among all parties, the Wilsons and McDonald's achieved a settlement as well on the issues of attorney fees, and McDonald's and Mobil agreed to submit the issue of the recoverability of "attorney

---

**3.** McDonald's is not seeking reimbursement of its litigation costs from the Wilsons, having reached a full settlement of the case with respect to them.

**4.** To date, there are no reported Oregon cases interpreting any of the provisions in this legislation.

fees"[5] to the court after the opportunity for briefing and a hearing on the matter.

On 1/21/93, the Court heard evidence and argument on McDonald's petition for attorney fees. In its written petition, McDonald's requested an award of $376,997 in fees and other litigation costs. At the hearing itself, McDonald's orally lowered this figure to approximately $290,000, after eliminating those fees and costs that were properly attributable to the litigation against the Wilsons.

As noted above, attorney fees and certain other expenses associated with litigation may only be recovered in this case if authorized by statute. The gist of McDonald's argument is that litigation costs are recoverable in that the legislature included such costs in its definition of "remedial action costs"—i.e.:

> reasonable costs which are attributable to or associated with a removal or remedial action ... including ... legal or enforcement activities....

McDonald's interprets the phrase "legal or enforcement activities" as encompassing private party litigation designed to achieve contributions towards clean-up costs. In support of its position, it cites federal legislation [CERCLA][6] on which the Oregon Superfund Statute is patterned, which authorizes the government to recover "legal" costs incurred in enforcing its provisions. 42 U.S.C. § 9604(b). See: *T & E Industries, Inc. v. Safety Light Corp.,* 680 F.Supp. 696, 707–08 (D.N.J.1988). McDonald's argues that since the use of the word "legal" entitles the government to recover litigation costs under CERCLA, it follows that this choice of terminology by the Oregon legislature in its definition of "remedial action costs" conclusively establishes its intent to allow private parties to recover their litigation expenses.

The fundamental problem, however, with this contention is that it requires the Court to focus almost exclusively on the legislature's insertion of one word—"legal"—in its definition of remedial action costs while ignoring the context in which it appears and other provisions in the Oregon legislation which clearly evidence an intent to distinguish between the State and private parties as regards the right to recover litigation costs.

■ The issue herein is one of statutory construction. An Oregon court undertaking to interpret this Superfund Statute would first attempt to discern the intent of the legislature by examining the plain language of the statute. Only if that language failed to provide sufficient insight into the legislative intent would the court then consider its legislative history. *See: Mattiza v. Foster,* 311 Or. 1, 4, 803 P.2d 723 (1990).

It also bears reiterating that the awarding of attorney fees to the prevailing party is the exception, rather than the rule, under Oregon law. In other instances wherein the legislature has authorized the recovery of attorney fees, it has done so in plain and unambiguous language:

ORS 30.860(2)—prevailing party in trade discrimination case allowed "reasonable attorney fees at trial and on appeal";

ORS 35.346(2)—prevailing party in condemnation case allowed "reasonable attorney fees";

ORS 646.638—prevailing party in unlawful trade practices case allowed "reasonable attorney fees at trial and on appeal";

ORS 646.770—prevailing party in antitrust case allowed "reasonable attorney fees at trial and on appeal";

ORS 20.105( )—prevailing party in civil action allowed "reasonable attorney fees" if court finds other party wilfully disobeyed a court order or acted in bad faith in pursuing

---

5. As noted previously, Mobil asserts that the only issues reserved for a court ruling was whether McDonald's could recover its attorney fees, and if so, the amount of fees which are reasonable. McDonald's asserts that the term "attorney fees" encompassed all costs of litigation. As the parties clearly failed to have a meeting of the minds on the meaning of this term, McDonald's is not precluded by the terms of its settlement agreement from seeking recovery of the entirety of its litigation costs. I also note that, in its settlement papers and discussions, McDonald's counsel used the term "attorney fees" interchangeably with "litigation costs".

6. Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. § 9601 *et seq.*

claim or defense; see also ORCP 17(c) [imposing sanctions for similar misconduct to include "reasonable attorney fee(s) ]";

ORS 107.135(7)—allowing prevailing party in domestic dispute case to recover "reasonable attorney fee(s)" if adverse party is found to have acted in bad faith;

ORS 128.155—beneficiary who prevails in proceedings to modify charitable trust administration authorized to recover "reasonable attorney fees" incurred in the proceeding.

Given that the Oregon legislature has historically manifested its intent to authorize the recovery of litigation costs by plainly referencing such costs in its legislation, the theory that it departed from this practice but nonetheless intended to authorize such recovery by cryptic reliance on counterpart federal legislation and caselaw is unpersuasive.

■ McDonald's interpretation is further eroded by the undisputed fact that "remedial action costs" normally include legal costs that are associated with the actual clean-up of the contaminated site, as distinct from any subsequent litigation over liability questions. The evidence at the hearing on McDonald's petition established that legal costs are incurred in preparing site remediation plans, in obtaining state certification for the remedial action taken, and in various other ways unrelated to litigation.

Moreover, in another section of the Superfund legislation, the legislature expressly authorized the recovery of legal costs *in addition to* remedial action costs and punitive damages where liable private parties force the state to initiate a lawsuit to recover the amount owed:

If the state's remedial action costs and punitive damages are not paid by the liable person to the department within 45 days after receipt of notice that such costs and damages are due and owing, the Attorney General, at the request of the director, shall bring an action in the name of the State of Oregon in a court of competent jurisdiction to recover the amount owed, *plus reasonable legal expenses.* (emphasis added)

ORS 465.330(3).

If, as McDonald's asserts, litigation costs were already included in the definition of "remedial action costs", the inclusion of the phrase "plus reasonable legal expenses" in this provision is a needless redundancy.[7]

Finally, McDonald's reliance on the legislative history of this statue is of no avail. Since a reading of the Superfund Statute itself reveals that the legislature expressly authorized the state to recover its litigation costs in pursuing legal actions under the statue, but not private parties, it is unnecessary to examine its history. Nonetheless, a review of the legislative hearings reveals that there was no reference during those hearings to a private right to attorney fees, nor any reference to the issue of attorney fees whatsoever. Nor is federal caselaw interpreting CERCLA of help to petitioner. While recognizing that Oregon will generally interpret a state statute modeled on a federal statute as federal courts have interpreted the federal law,[8] there is a division of authority under federal caselaw regarding the issue of whether CERCLA authorizes the recovery of private party litigation costs. Indeed, the majority of federal courts addressing the issue have concluded that Congress did not intend

---

7. At the hearing, McDonald's contended that this phrase was added in order to authorize the state to recover any excess litigation expenses incurred in pursuing a claim for punitive damages. The legislative history is silent on this point (as well as on the entire issue of litigation costs), but common sense compels one to reject this explanation: if litigation costs were already included as part of the state's remedial action costs, why would the legislature deem it necessary to address the costs associated with each separate claim filed by the state? Furthermore, ORS 465.260(8) caps punitive damages at three times the amount of the state's remedial action costs. It strains credulity to infer that the legislature

would contemplate that additional legal expenses would be incurred by the mere act of multiplying and thereupon requesting treble damages, or that the recovery of such a trivial amount of excess litigation costs merited special authorization. By attempting to reconcile § 465.330(3) with 465.255(1), McDonald's only demonstrates how mysteriously esoteric the analysis must be in order to find legislative intent to authorize the recovery of litigation costs by private parties.

8. *University of Oregon Co-operative Store v. Dept. of Revenue*, 273 Or. 539, 542 P.2d 900 (1975).

to create a private right to attorney fees incurred in litigation. *See Dedham Water Co., Inc. v. Cumberland Farms Dairy, Inc.,* 972 F.2d 453, 464 n. 9 (1st Cir.1992) (not recoverable); *Santa Fe Pac. Realty Corp. v. United States,* 780 F.Supp. 687, 694–96 (E.D.Cal.1991) (not recoverable); *United States v. Western Processing Co., Inc.,* No. C89–214M (W.D.Wash. Aug. 19, 1992) (McGovern, J.) (not recoverable); *Alloy Briquetting Corp. v. Niagara Vest, Inc.,* 802 F.Supp. 943 (W.D.N.Y.1992) (not recoverable); *Abbott Lab. v. Thermo Chem, Inc.,* 790 F.Supp. 135, 141–42 (W.D.Mich.1991) (not recoverable); *Leonard Partnership v. Town of Chenango,* 779 F.Supp. 223, 229–30 (N.D.N.Y. 1991) (not recoverable); *State v. SCA Servs., Inc.,* 754 F.Supp. 995, 1000 (S.D.N.Y.1991) (not recoverable); *United States v. Hardage,* 750 F.Supp. 1460, 1511 (W.D.Okla.1990) (not recoverable); *Fallowfield Dev. Corp. v. Strunk,* No. CIV.A.89–6844, 1990 WL 52745 (E.D.Pa. Apr. 23, 1990) (not recoverable); *Mesiti v. Microdot, Inc.,* 739 F.Supp. 57, 62–63 (D.N.H.1990) (not recoverable); *Regan v. Cherry Corp.,* 706 F.Supp. 145, 149 (D.R.I. 1989) (not recoverable); *T & E Indus. Inc. v. Safety Light Corp.,* 680 F.Supp. 696, 707–708 (D.N.J.1988) (not recoverable); *BCW Assocs. v. Occidental Chem. Corp.,* No. CIV.A.86–5947, 1988 WL 102641 (E.D.Pa. Sept. 29, 1988) (not recoverable); *In re Hemingway Transp., Inc.,* 108 B.R. 378, 383 (Bankr. D.Mass.1989) (not recoverable). *But see General Elec. v. Litton Indus. Automation Sys.,* 920 F.2d 1415, 1421–22 (8th Cir.1990) (recoverable); *Pease & Curren Ref., Inc. v. Spectrolab, Inc.,* 744 F.Supp. 945, 949–52 (C.D.Cal.1990) (recoverable); *Shapiro v. Alexanderson,* 741 F.Supp. 472, 480 (S.D.N.Y. 1990) (recoverable).

Congress' express authorization for the government to recover its legal costs in enforcing CERCLA, 42 U.S.C. § 9604(b), is simply too slender a reed to support the proposition that the Oregon legislature thus intended the broadest possible interpretation of the term "legal" when it defined recoverable remedial action costs, especially in view of other provisions in the Oregon Superfund Statute and comparable state legislation wherein the legislature has awarded the ability to recover private party attorney fees.

*Conclusion and Alternative Findings*

■ For the reasons set forth above, I find that the Oregon legislature did not authorize private parties to recover attorney fees and related litigation costs under the Superfund Statute, and accordingly deny McDonald's petition for attorney fees.

Since this order is certain to be appealed, and given that an extensive hearing was conducted on the issue of the amount of fees and costs which are reasonable in the event such costs were held to be recoverable, it is appropriate to enter alternative findings in order to obviate the need for further hearings should this ruling be reversed:

After considering the evidence developed at the hearing on McDonald's petition, as well as the affidavits and records submitted in connection with the proceedings, the Court finds as follows:

1) McDonald's has established by a preponderance of the evidence that Mobil was responsible for petroleum contamination on the site during the period in which Mobil owned or operated a petroleum station on the property.

2) Mobil is thus strictly liable for clean-up costs under ORS 465.255(1).

3) McDonald's and Mobil settled that portion of McDonald's claim for legal costs which were attributable to the actual clean-up of the site as opposed to the ensuing litigation between the parties.

4) The full amount requested by McDonald's in its petition is not reasonable. Among other factors, I consider the disproportionality of the fees sought to the original amount in controversy, the amount of fees incurred by counsel for Mobil and the Wilsons in connection with this litigation, the analysis of McDonald's fees presented by expert witness David Markowicz, and McDonald's failure to pursue the reasonable option of further settlement discussions after the conference before Judge Panner. Accordingly, were I to conclude that Oregon law permitted McDonald's to recover its attorney fees and related litigation costs, I would fix said recoverable costs at $178,000.

This figure consists of attorney fees of $158,000, disbursements of $16,000 which were attributable to Mobil's part in the litigation, and expert fees of $4,000. It does not include any amount for McDonald's administrative expenses.

5) Mobil is not entitled to recover any attorney fees or litigation costs from McDonald's.

## ORDER

I find that the reasonable attorney fees and related litigation costs incurred by McDonald's in this case is in the amount of $178,000. However, as the Oregon Superfund Statute does not authorize the recovery of attorney fees by private parties, McDonald's petition for attorney fees (#119) is hereby DENIED.